SARAH P. CONE, Appellant, v. ELIZABETH DON-OVAN et al., Administrators of Estate of JOHN DONOVAN.

Division Two, July 30, 1918.

1. **WILL: Attestation: Knowledge of Witnesses.** There can be no valid attestation of a will unless the attesting witnesses know at the time that the instrument is being made and attested as a will.

2. ———: ———: **Presumption of Knowledge: Genuine Signature.** If the instrument purports on its face to be a will and the signatures of the witnesses are conceded to be genuine and those witnesses, though still living, have forgotten the facts as to such attestation, the law may well presume, in the absence of contrary evidence, that all things connected with its execution and

attestation were rightly done, and that the witnesses were informed that the instrument was a will; but such presumption cannot be indulged where the instrument does not purport to be a will; it will not be indulged if the instrument is in the form of a letter, and the maker concealed from his stenographer the name of the alleged legatee and after the balance was written by her he wrote in the beneficiary's name, and after it was signed by him and the two witnesses he placed it in a sealed envelope and wrote on it: "In the event of my death I want this letter to be delivered unopened" to a designated friend, and then placed it in a vault among his papers, where it remained until after his death, twelve years later.

3. ———: ———: ———: **Overcome by Evidence.** Even if the law, in the absence of contrary evidence, will presume that witnesses, whose signatures are conceded to be genuine, were informed by the maker that the instrument, which purports on its face to be a will, was his will, such presumption may be overcome by evidence; and where there is strong evidence to overcome it, the finding of the trial court against the paper will not be disturbed on appeal.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer,* Judge.

AFFIRMED.

*Fred A. Bangs* and *O. W. Watkins* for appellant.

(1) Was the document attested by two competent witnesses who subscribed their names thereto in the presence of the testator? It is not necessary that a will should have any prescribed attestation clause. Ela v. Edwards, 16 Gray (Mass.), 91, 92. In the early English case of Hands v. James, 2 Comyns, 530, the court held that the presumption arose, upon proof of the signatures of the testator and attesting witnesses, that the will had been duly executed, although the details of the execution were not recited in the attestation clause. To the same effect is Croft v. Paulet, 2 Strange, 1109, and the case of John Johnson, 2 Curt. 341. These cases have been cited and approved by the courts of this country and by all leading text-book writers without an exception, and the courts of the United States have extended the doctrine to cases where the witnesses have forgotten the details required by the statute,

whether the facts are shown in the attesting clause or not. 1 Greenleaf on Evidence, 38a; 1 Jones on Evidence, sec. 44; 2 Wigmore on Evidence, sec. 1512; 14 Ency. Evidence, sec. 407F; 40 Cyc. 1273-1274; Beach Law on Wills, sec. 39. The later English courts and the courts of the United States have extended this doctrine to apply to a case where the witness has forgotten the facts. Clarke v. Dunnavant, 10 Leigh, 13; Tyler's Estate, 121 Cal. 405; Craig v. Craig, 156 Mo. 362. (2) It cannot be argued that an attestation clause is necessary to the validity of a will, as the rule has always been without any exception, that a will is valid without any attestation clause whatever. 1 Jarman on Wills (4 Ed.), sec. 74; The proof of execution of the will in question is purely a matter of evidence. Tyler's Estate, 121 Cal. 405; Burgoyne v. Showler, 1 Rob. Eccl. 10; In re. Leach, 12 Jur. 381. In the case of Kirk v. Carr, 54 Pa. 285, the court says: "Want of memory will no more destroy the attestation than insanity, absence or death." Clarke v. Dunnavant, 10 Leigh, 13; Deupree v. Deupree, 45 Ga. 415; Ela v. Edwards, 16 Gray (82 Mass.) 91; Elliott v. Elliott, 92 Mass. 357; Fatheree v. Lawrence, 33 Miss. 622; Lawrence v. Norton, 45 Barber 452; McKee v. White, 50 Pa. St. 360; Barnes v. Barnes, 66 Me. 286; More v. More, 211 Ill. 268; Woodruff v. Hundley, 127 Ala. 640; Tevis v. Richter, 10 Cal. 466; Pennell's Lessee v. Wegant, 2 Har. (Del.) 51; Mead v. Trustees of Presbyterian Church, 229 Ill. 526. In the case of Young v. Banner, 27 Gratt. (Va.) 96, the court held, l. c. 108: "Surely every reasonable presumption ought to be made in favor of the proper execution of the will," and on page 106, the court says: "Such presumptions are absolutely essential to the protection of property and the security of titles. Were it otherwise the most important and solemn instruments would often fail to take effect by the death, or from the mere failure of attesting witnesses, real or assumed, to recall each and every formality presented for the execution of testamentary papers." Chisholm v. Ben, 7 B. Mon. (Ky.) 408; Gould v. Theological

Seminary, 189 Ill. 287; Butler v. Benson, 1 Barber, 526; Jackson v. Christman, 4 Wend. 277; Carpenter v. Denoon, 29 Ohio St. 379; Ex Parte Brock, 37 S. C. 348; Webb v. Dye, 18 W. Va. 376.

*John E. Dolman* for respondents.

(1) Mr. Donovan was a man of intelligence, entrusted with the management of large business affairs, and it is only reasonable to presume that had he intended this letter to be a codicil to his will he would have said so in no uncertain language. He would not have surrounded the execution of it with so much secrecy; he would have informed the witnesses of his intention and would not have directed that the letter be delivered unopened to G. F. Swift, in the event of his death. He would have called it a codicil and not a request, and he would not have called upon Swift to perform this request instead of the executors who undoubtedly he had named in the will to which he referred. That he did not intend this letter to operate as a codicil to his will is clearly shown by his intention not to publish it as such, but to have the letter delivered unopened to Swift, in whom he undoubtedly sought to impose a secret trust to carry out or not as he should think best. That he did not intend it to be a codicil is shown not only by the language of the letter himself, but by the fact that when he destroyed his will he did not also destroy the codicil, or at least if he had intended it to be a will he would, upon the death of Mr. Swift, nearly eight years before his own death, have directed it to some other friend or made some change therein to indicate that he still desired it to operate as a will. (2) A will and a codicil thereto are one instrument, and the testator's intention must be ascertained from the four corners thereof. Middleton v. Dudding, 183 S. W. 443. Griffith v. Witten, 252 Mo. 627; Wells v. Fuchs, 226 Mo. 106. (3) "It is not the mere physical act of signing that the witnesses attest; it is that the instrument signed with the name of the testator is his will."

Walton v. Kendrich, 122 Mo. 525. "The witnesses must know that it is the will of the testator and witness it as such." Odenwalder v. Schorr, 8 Mo. App. 467; Withinton v. Withinton, 7 Mo. 589; Cravens v. Faulconer, 28 Mo. 19; Harris v. Hayes, 53 Mo. 90; Norton v. Paxton, 110 Mo. 456; Grim v. Titman, 113 Mo. 57; Ott v. Leonhardt, 102 Mo. App. 43. It is essential that the proper communication be made from the testator to the witnesses so that they may be able to depose to the act having been understandlingly done and that the paper is his will. Mittenberger v. Mittenberger, 78 Mo. 27; Bensberg v. Wash. University, 251 Mo. 657. It is essential that it be made to appear unequivocally that the testamentary character of the instrument was communicated to the witnesses by the testator by some word, sign, act or conduct. 40 Cyc. 118, 119; In Matter of Turell, 47 N. Y. App. Div. 560, 62 N. Y. Supp, 1053, 166 N. Y. 330; Robbins v. Robbins, 50 N. J. Eq. 742. Even though the deceased intended the letter in question to be a codicil to his will, the destruction of the will is an implied revocation of the codicil. Woerner Law of Admin., p. 86; Matter of Weston, 115 N. Y. Supp. 1149; 40 Cyc. 1281. (4) The court sitting as a jury having found that the memory of the witnesses was good, that they never signed this letter as a will, and were never informed that it was intended for a will, appellants are concluded thereby. Walton v. Hendrick, 122 Mo. 504; Ortt v. Leonhardt, 102 Mo. App. 38. The presumption of due attestation of a will from a certificate of attestation cannot overcome the positive testimony of the attesting witnesses showing that the statute was not complied with. In re Solomon's Estate, 145 N. Y. Supp. 528; In re Shaffer, 2 How. Pr. (U. S.) 494.

ROY, C.—This is a proceeding to prove a certain instrument as the will of John Donovan, deceased. There was a finding and judgment rejecting said instrument as such will, and the plaintiff has appealed.

275 Mo.—36

The deceased was for many years the vice-president and general manager of the St. Joseph Stock Yards Company, and vice-president of the German-American Bank. He had a wife and daughter. He died in November, 1913, aged about fifty-eight years. The following instrument, except the part in italics, was written at his direction by his stenographer. It was then signed by him and by the witnesses as shown:

"St. Joseph, Mo., December 28, 1901.
"Mr. G. F. Swift, Chicago, Ill.

"Dear Sir:—I did on December 27, 1901, make and execute my will. .Upon reflection I have determined to leave enough of the capital stock of the Union Terminal Railway Company to *Mrs. Sarah P. Cone of No 1199 Wilcox Avenue, Chicago*, Illinois, so that the income from the same may bring her the sum of eighteen hundred dollars per year, and I leave to your judgment the amount of stock to be issued for this purpose; the balance of said stock which may be due me shall be issued to my heirs as per my will. I ask that you perform this request as by every sense of right and justice it should be recognized, and I could not further emphasize my desire to have it done.

"Yours Truly, Jno. Donovan."

"Signed in the presence of P. P. Welty, Louis Siemens."

The words in italics were in the handwriting of the deceased.

The stenographer testified that she wrote that instrument on the typewriter, leaving a blank where the italics are, and turned it over to Donovan with such blank unfilled. The witnesses to that instrument were long-tried and trusted employees of the company. They were put on the stand by plaintiff and testified to their signatures and that of the deceased. But they both testified that they had no recollection about the signing of the paper. Welty testified that he never, at any time, witnessed any instrument which he was informed was the will of said Donovan. Siemens testified that he witnessed one instrument and only one which he was in-

formed at the time was the will of Donovan, and that the one which he so witnessed was not the one here involved. Both those witnesses testified that they witnessed various documents for Donovan. The stenographer testified that, after that document was witnessed, Donovan sealed it in an envelope on which were the words: "G. F. Swift, Esq., Chicago, Ill. In the event of my death I wish this letter to be delivered upopened to Mr. G. F. Swift," and that it was put in the vault among Donovan's papers, where it remained until after his death.

It is agreed that such endorsement on the envelope was in the writing of the deceased and that Swift died in 1905.

I. There can be no valid attestation of a will unless the attesting witnesses know at the time that the instrument is being made and attested as a will. **Attestation.** [Grimm v. Tittman, 113 Mo. 56; Walton v. Kendrick, 122 Mo. 504, l. c. 525; Moore v. McNulty, 164 Mo. 120.]

II. Appellant affirms that where the signatures of the witnesses to a will are conceded to be genuine, and where those witnesess, though still living, have forgotten the facts as to such attestation, the law **Presumption of Knowledge.** will presume, in the absence of contrary evidence, that all things connected with the execution and attestation of the will were rightly done, and that the witnesses were informed that the instrument was a will. We will, for the purposes of this case, concede the general rule as claimed. But in this connection we will say that we have been cited to no authority which applies such rule to this kind of a case. In all the cases cited by appellant (we will not here set them out), so far as appears, the instruments purported on their faces to be wills. In such cases the courts could very well presume, in the absence of evidence to the contrary, that the witnesses knew the instruments to be wills. We will not here discuss the question as to whether, under the law, if this instrument were properly

attested, it would be a will.  Perhaps it would be.  The question in hand right here is whether the law, in the absence of contrary evidence, will presume from the conceded facts that the witnesses understood at the time it was a will.  In form at least, it is a letter and not a will.  Donovan, after it was attested, sealed it in an envelope and made an endorsement on it, speaking of it as a ''letter,'' and put the seal of secrecy on it not to be broken until his death.  He concealed from the stenographer the name which he inserted in that letter.  Three facts stand out in bold relief here.  He did not want anybody to know what he was doing, the paper was in the form of a letter, and he branded it as a letter.  The law cannot, in the face of those three facts, presume that he told the witnesses that it was his will.   There is no authority anywhere justifying such a presumption.

III.  Even if the law, in the absence of contrary evidence, should raise such a presumption, there is strong evidence here to overcome such presumption.  Both the witnesses had at various times witnessed instruments for Donovan.  Neither of them remembered anything about attesting this instrument.  But Welty testified that he did not at any time attest an instrument which he was informed was Donovan's will.   Siemans testified that he never had witnessed but one instrument as Donovan's will, and that the one thus witnessed was not the one here involved.   The trial court doubtless considered that evidence as strongly supported by the three facts above mentioned.   Anyway, that was a question for the trial court on the weight of the evidence.
The judgment is affirmed.  *White, C.,* concurs.

PER CURIAM.— The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All of the judges concur.